UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TOM LEE RAGLIN,<br><br>                      Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>                     Defendant. | Case No. 3:11-cv-05721-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

      Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

      On March 7, 2007, plaintiff filed an application for disability insurance benefits, alleging disability as of September 15, 2000, due to problems with his back and left leg, depression, diabetes, and high blood pressure. See Administrative Record ("AR") 12, 108, 127. His application was denied upon initial administrative review and on reconsideration. See AR 12, 68,

ORDER - 1

72.  A hearing was held before an administrative law judge ("ALJ") on September 14, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 23-65.

On October 16, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 12-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 14, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981.  On September 12, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on November 23, 2011. See ECF #8.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; and (4) in finding him to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, while the Court agrees that the ALJ erred in determining plaintiff to be not disabled, the Court finds that this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

ORDER - 2

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

II.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

ORDER - 3

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Hurst

Plaintiff challenges the ALJ's following findings:

> Treatment provider Randy Hurst Psy.D. . . . opined that the claimant was unable to retrain and work in the position of an office assistant due to the inability to stand or sit for long periods of time, tolerate pain, perceived pressure, and poor sustained attention. (Exhibit 24F/4). Furthermore, in an impairment questionnaire dated December 2007, Dr. Hurst opined that the claimant's impairments caused marked limitations in activities of daily living

ORDER - 4

>   and maintaining social functioning, extreme difficulty in maintaining concentration, persistence and pace, and essentially continuous episodes of decompensation. (Exhibit 36F/7). Limited weight is given to the opinion of Dr. Hurst. His opinion that the claimant was unable to retrain and work in a particular position is outside his area of expertise since the doctor is a psychologist and not a medical doctor. In addition, Dr. Hurst's opinion that the claimant had marked limitations in activities of daily living and maintaining social functioning, extreme difficulty in maintaining concentration, persistence and pace, and essentially continuous episodes of decompensation is inconsistent with the objective medical evidence which reveals only conservative treatment for the claimant's impairments.

AR 19. The undersigned agrees the ALJ erred in so finding here. First, given that defendant's own regulations treat psychologists and medical doctors equally as "acceptable medical sources," the ALJ failed to provide any legal or other support for his proposition that only the latter are qualified to provide opinions on a claimant's ability to retrain and work in a particular position. See 20 C.F.R. § 404.1513(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources").

Second, as noted by plaintiff, the ALJ failed to state with any specificity what objective medical evidence he found was inconsistent with the findings of Dr. Hurst to the extent that the weight of the record did not support them, or what additional treatment should have been sought given that both psychotropic medication and mental health counseling already had been pursued. While it is true that the ALJ did note other objective medical evidence in the record that was not consistent with Dr. Hurst's findings (see AR 19), he did not explain why he found that evidence to be more credible than the findings of plaintiff's own treatment providers, including also those of Vern Harpole, M.D., discussed in greater detail below. See Lester, 81 F.3d at 830 (in general, more weight is given to treating physician's opinion). As such, the ALJ erred.

   B.   Dr. Harpole

Plaintiff also challenges the findings the ALJ made with respect to Dr. Harpole's opinion:

ORDER - 5

> In June of 2007, treatment provider Vern Harpole M.D. noted that the claimant reported that he had no improvement of his depression symptoms with his anti-depressant medication or psychological counseling. (Exhibit 9F/6). However, Dr. Harpole also noted that the claimant was pleasant, upbeat, and did not present with a depressed affect during the office visit. (Exhibit 9F/6). Dr. Harpole later opined that the claimant's back problems alone did not prevent him from performing work, but in combination with his depression, it was unlikely that the claimant would ever be able to do any work. (Exhibit 13E/17). Limited weight is given to the opinion of Dr. Harpole. Although the claimant's impairments did cause some limitations, the objective evidence of record reflects that these limitations do not prevent the performance of all work activity. In addition, Dr. Harpole's opinion concerning the claimant's mental health was outside his area of expertise and inconsistent with the record as a whole.

AR 18. Again, as with Dr. Hurst, the undersigned agrees with plaintiff that the ALJ's reasons for rejecting Dr. Harpole's opinion are entirely inadequate. That is, it is insufficient for an ALJ to reject the opinion of a treating physician by merely stating, without more, that there is a lack of objective medical findings in the record to support that opinion. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). In addition, as one of plaintiff's treating physicians, it was entirely within Dr. Harpole's "area of expertise" to provide an opinion as to his mental health condition, particularly as it related to his back problems. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (rejecting assumption that psychiatric evidence must be offered by psychiatrist, as under general principles of evidence law, primary care physician was qualified to give medical opinion on claimant's mental state as it related to her physical disability). Accordingly, here too the ALJ erred.

C.      Plaintiff's Pain Disorder

Plaintiff argues that while the ALJ found he had a "severe" pain disorder (see AR 14),[1] he failed to later consider the impact thereof on his symptoms and limitations. The undersigned

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation

ORDER - 6

agrees the ALJ erred here, given that Dr. Hurst diagnosed him with a pain disorder and that he found plaintiff had a number of marked to severe mental functional limitations, based in part it on that diagnosis. See AR 284, 287, 958, 960-61, 963, 966, 980, 987, 990, 1013, 1038, 1052, 1056-57, 1061, 1064-65.  Given that the ALJ, as discussed above, erred in rejecting Dr. Hurst's evaluation report, it is far from clear that the ALJ properly considered his pain disorder diagnosis and its impact on plaintiff's functioning.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

---

process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3. An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  The step two is a de minimis screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

ORDER - 7

and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

With respect to plaintiff's credibility in this case, the ALJ found in relevant part:

> When evaluating the claimant's credibility, once [sic] must consider the context in which this claim has been made. The claimant has been waging a battle for worker's compensation benefits for some years, receiving time loss benefits of $1300 every two weeks from 2002 until July 2009. Additionally, he was subsequently provided a pension if [sic] $2640 a month. These circumstances may well have acted as a disincentive to the claimant's seeking other work subsequent to his claimed onset date and prior to his date last insured. (Exhibit 34F/3). In addition, the claimant's credibility regarding the severity of his symptoms and limitations is diminished by the lack of objective medical evidence to support his allegations.

AR 20. Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his credibility here. Once more, the undersigned agrees, as there is no evidence that plaintiff's pursuit of workman's compensation benefits was anything other than appropriate in this instance, even if the amount of benefits he received can be said to be substantial. The ALJ's speculation that it "may well have acted as a disincentive" for plaintiff here is just that, mere speculation, and thus constitutes an insufficient basis for finding he lacks credibility.

In addition, while an ALJ's determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement, the ALJ did not state what objective medical evidence in the record diminishes plaintiff's credibility. See

ORDER - 8

Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998); Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (ALJ's findings regarding credibility "must be sufficiently specific to allow [the Court to conclude he or she] rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit [his or her] testimony regarding pain'"; "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain") (citation omitted).  This stated reason for rejecting plaintiff's credibility also lacks legitimacy in light of the ALJ's errors in evaluating the medical evidence in the record regarding mental health condition.

On the other hand, as pointed out by defendant, the ALJ noted that in July 2004, David Murphy, M.D., observed plaintiff "appeared to give less than full effort during the examination." AR 17; see also AR 795 ("[Plaintiff g]iving what appeared to be less than full effort, with no signs of maximum strength effort.").  The ALJ also noted that in July 2006, William Herzberg, M.D., found plaintiff "had multiple inconsistencies on neurologic examination that led him to believe [he] had malingering conversion disorder or an elaboration of symptoms." AR 17; see also AR 678.  Lastly, the ALJ noted that in September 2008, Lanny Snodgrass, M.D., Ph.D., commented that plaintiff "appeared to fake or give low effort on a mental status test based on his score of 8 when the mean score for a severely brain damaged person was 9 and a mentally retarded person was 10." AR 19; see also AR 816.

The undersigned finds the ALJ properly relied on these reports of symptom exaggeration and lack of effort to find plaintiff less than fully credible. See Smolen, 80 F.3d at 1284 (ALJ may consider observations of physicians regarding the nature of symptoms).  Plaintiff argues the ALJ did not actually indicate he was discounting plaintiff's credibility for this reason.  Although it is true that the ALJ did not discuss the above reports on the same page as he discounted plaintiff's

ORDER - 9

credibility on the basis of his worker's compensation benefits and inconsistency with the medical evidence in the record, the ALJ did discuss those reports in the section of his decision in which he indicated he was considering plaintiff's credibility. For example, on page 5 of his decision, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment.

AR 16. Then, in the pages that follow, the ALJ discussed the above reports in which plaintiff's symptom exaggeration and lack of effort were noted, along with the other evidence in the record, including the objective medical evidence and plaintiff's worker's compensation benefits. See AR 16-20. As such, the undersigned finds the ALJ made sufficiently clear his intent to consider the evidence of symptom exaggeration and lack of effort in his credibility analysis.[2] Accordingly, the undersigned also finds the ALJ did not err in discounting plaintiff's credibility on this basis, and therefore overall in this case.[3]

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

---

[2] Plaintiff further argues that the ALJ did not make a finding of malingering. But such a finding is only necessary to avoid having to provide "clear and convincing" reasons for discounting a claimant's credibility. Here, however, the ALJ's reliance on the above evidence of symptom exaggeration and lack of effort is by itself a clear and convincing reason for discounting plaintiff's credibility. Plaintiff argues as well that neither Dr. Hurst nor Dr. Harpole provided an opinion indicating the presence of malingering. But the mere fact that other medical sources – even treating ones – did not make such a finding, says nothing about the credibility of the three other independent examining medical sources in the record who have provided evidence of questionable credibility. The record, furthermore, indicates Dr. Hurst himself found some possible evidence of possible malingering on testing, although he ultimately did not make that diagnosis. See AR 276 ("These results are interesting in that, on the surface, they appear to suggest malingering or exaggeration of deficit."), 282 (concluding plaintiff's "scoring high" on testing suggestive of malingering instead "likely reflect[ed] a 'cry for help' and severe distress"), 977; see also AR 812, 816.

[3] See Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (noting that while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record"); see also Tonapetyan, 242 F.3d at 1148.

ORDER - 10

take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains lay witness statements from plaintiff's family members, which set forth their observations of plaintiff's symptoms and limitations. See AR 162-65. With respect to those statements, the ALJ found as follows:

> I also considered the written statements of the claimant's brother, Todd Ranglin, his parents, Thomas and Cailey Ranglin, his sister and brother in law, Jason and Melissa Morones, and his aunt and uncle, Bonnie and Bill Sanders. (Exhibit 8E). They reported that the claimant had pain and discomfort, episodes of depression and anxiety, abdominal discomfort, insomnia, and back pain that radiates down his legs. (Exhibit 8E). They also reported that the claimant used a cane to walk, was unable to sit or stand for long periods of time, had limited daily activities, and was unable to participate in physical activities such as boating, hunting, or sports. (Exhibit 8E). While the observations of the claimant's family are generally credible and consistent with the claimant's own reports, limited weight is given to their opinions as they fail to speak to what the claimant could do despite his limitations prior to the 1996 date last insured, the period at issue.

AR 19. Here too the ALJ erred. First, as noted by plaintiff, his date last insured is December 31, 2006, not 1996, and thus the period at issue in this case is September 7, 2001, the alleged onset date of disability, through December 31, 2006. See AR 14. Second, also as noted by plaintiff, all of the lay witness statements do relate back to this time period, although it is not entirely clear all of the comments contained therein concern that period. See AR 162-65.

In addition, those statements do indicate limitations greater than those found by the ALJ,

ORDER - 11

contrary to defendant's assertion.  For example, Todd Ranglin stated that plaintiff was "not able to sit or stand for long periods of time," which would appear to be inconsistent with an ability to perform sedentary work as found by the ALJ. See AR 16; Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 *3 (providing that in regard to sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday").  Likewise, plaintiff's parents stated that he could not lift "very much" and had "a hard time pulling too" and needed a cane to walk. AR 163.  His sister and brother-in-law stated that he "often [could not] sit . . . for very long periods of time," that he used a cane to walk "on a regular basis" and that his "severe back pain . . . made daily activities impossible." AR 164.  Lastly, plaintiff's aunt and uncle stated that he could not "sit comfortably for any length of time without standing up." AR 165.

VII.     The ALJ's Findings at Step Five

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four of the evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

Residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

ORDER - 12

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As indicated above, he ALJ found that plaintiff had the residual functional capacity to perform "**a limited range of sedentary work**," that he "**should not stand or walk for more than two hours**" and that he was "**limited to performing unskilled work with only occasional public contact**." AR 16 (emphasis in original). At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 61. In response to that question, the vocational expert testified that an individual with those limitations – and with

ORDER - 13

the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 61-62. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy, and thus that he was not disabled. See AR 20-21.

Plaintiff argues the ALJ erred in so finding, because the hypothetical question the ALJ posed to the vocational expert did not contain a limitation to sedentary work. While it is true the ALJ did not expressly use the term sedentary when posing that question, the ALJ did state that "the hypothetical claimant should not be required to stand or walk more than two hours in the workday," thereby clearly indicating such an individual could perform only at the sedentary level. AR 61. As such, the undersigned finds no error here. On the other hand, given the errors the ALJ committed in evaluating the medical and lay witness evidence in the record as discussed above, it is far from clear that the residual functional capacity assessed by the ALJ, and therefore the hypothetical question he posed to the vocational expert, is completely accurate. The ALJ thus erred at this step of the sequential disability evaluation process as well.

The undersigned, however, rejects plaintiff's argument that he should be found disabled at this time on the basis of Dr. Hurst's opinion that he had "[n]o useful ability" to "[c]omplete a normal workday and workweek." AR 1063-64. This is because it is not at all clear from the record that the ALJ would be required to adopt that opinion – even in light of the ALJ's error in rejecting Dr. Hurst's evaluation report – given that, as indicated above, there is objective medical evidence that contradicts Dr. Hurst's findings (again even in light of the ALJ's failure to refer with sufficient specificity to that other evidence) and that the ALJ properly discounted plaintiff's credibility. Rather, as discussed below, remand for further administrative proceedings is more appropriate in this case.

ORDER - 14

VIII.  This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental health impairments, the lay witness evidence in the record, plaintiff's residual functional capacity, and his ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to defendant for the purpose of conducting additional administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court finds that the ALJ improperly concluded

ORDER - 15

plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 10th day of May, 2012.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

ORDER - 16